AMERICAN METAL FORMING CORPO-
RATION; Roger Schlossberg, Trustee,
Plaintiffs–Appellees,

v.

W. David PITTMAN, Defendant–
Appellant,

and

Patrice Kelley Pittman, Defendant.

No. 92–2609.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 25, 1993.

Decided April 24, 1995.

**ARGUED:** Michael Edward Marr, Baltimore, MD, for Appellant. Aron Uri Raskas, Kramon & Graham, P.A., Baltimore, MD, for Appellees. **ON BRIEF:** James P. Ulwick, Kramon & Graham, P.A., Baltimore, MD, for Appellees.

Before LUTTIG and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

Reversed in part, vacated in part, and remanded by published opinion. Judge

WILLIAMS wrote the opinion, in which Judge LUTTIG and Senior Judge SPROUSE joined.

## OPINION

WILLIAMS, Circuit Judge:

This case involves transactions between a corporation and its sole shareholder, officer, and director which resulted in a district court order imposing a constructive trust and assessment of damages. Because the Court of Appeals of Maryland, upon certification by this court, held that Pittman as sole shareholder neither usurped a corporate opportunity nor violated his fiduciary duties in the purchase and lease of property and equipment to his corporation, we reverse the district court's imposition of a constructive trust and vacate the assessment of damages. However, because we find a genuine issue of material fact exists as to whether $80,000 Pittman received from Pittcon was a loan or a bonus, we remand for further proceedings.

### I.

David Pittman was the President, a director, and the sole shareholder of Pittcon Industries, Inc. (Pittcon), a Maryland corporation employing fewer than fifty persons that manufactured metal construction components and customized drywall products. Patrice Pittman, David's wife, worked for Pittcon until at least 1984 and at one time had the title of Vice President of Marketing. She also served for a brief time as a director of the corporation.[1]

On May 23, 1988, Pittcon filed a voluntary petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Maryland.[2] The bankruptcy court appointed a Trustee to manage the affairs of Pittcon. In the fall of 1989, American Metal Forming Corporation (American) submitted a plan to the Trustee to purchase the assets of Pittcon, which was subsequently approved by the bankruptcy court.[3] Follow-

---

1. Ms. Pittman was never a stockholder of the corporation. Although she was named as a party to this lawsuit, it appears that David Pittman handled all of the transactions at issue, and that she was merely a co-owner of the real estate and equipment.

2. David Pittman testified at trial that Pittcon filed for bankruptcy as a result of a one million dollar judgment entered against it in the United States District Court for the Eastern District of Pennsylvania.

3. The bankruptcy court approved American's plan. Pursuant to the plan, American purchased all of Pittcon's net cash and personal property, all leases of realty and personalty, all technology, the customer list, the accounts receivable, and all

ing the asset purchase, American commenced this adversary proceeding in bankruptcy court against the Pittmans. Pursuant to the bankruptcy court's recommendation, this matter was transferred to the United States District Court for the District of Maryland. Subsequently, the Trustee filed a motion, which the district court granted, to intervene as a plaintiff. It thereafter filed a separate complaint against the Pittmans that was virtually identical to the one filed by American.

Two types of transactions involving Pittman are at issue in this case. The first involved a check for $80,000 that Pittman received from Pittcon in December 1986, which was initially treated as a loan by both Pittman and Pittcon. American and the Trustee claim that Pittman owes $52,872 to Pittcon to repay the 1986 loan.[4] Pittman argues, however, that the money was intended as a bonus, and that he later treated it as income in his 1987 individual tax return. The district court granted partial summary judgment in favor of American and the Trustee, holding that the $80,000 payment was a loan and not a bonus, and therefore, Pittman owed the balance of the loan to Pittcon.

The second type of transaction at issue in this case involves the purchase in 1980 and again in 1985 of properties located in Prince George's County to expand Pittman's operations. To purchase the properties, Pittman obtained Industrial Revenue Bond (IRB)[5] financing with Prince George's County, Maryland, as the secured party. Citizens Bank of Maryland was the assignee on the 1980 purchase and Maryland National Bank was the assignee on the 1985 purchase. In addi-

tion to the purchase of properties, IRB funds were used to purchase equipment. Both the property and equipment were purchased in the names of Pittman and his wife who rented the property and equipment to Pittcon pursuant to long-term leases.

American and the Trustee sought the imposition of a constructive trust and the transfer to American of legal title in the properties and equipment that the Pittmans purchased using IRB funds. The complaints alleged that the Pittmans had breached their fiduciary duties to Pittcon by purchasing the properties and equipment in their names and then leasing them back to the corporation at prices above the fair market rate, and that the Pittmans owed the corporation damages in the amounts overcharged.

After a bench trial, the district court found that David Pittman had breached his fiduciary duty to Pittcon through usurpation of a corporate opportunity. The district court entered an order granting a constructive trust to American and the Trustee and further ordered the Pittmans to deliver legal title to the buildings and equipment to American.[6] The district court found that although the 1980 lease for the property was at a fair market rate, the lease for the equipment was above the fair market rate. The district court further found that the 1985 leases for both the property and the equipment were priced above the fair market rate. *See American Metal Forming Corp. v. Pittman,* 135 B.R. 782 (D.Md.1992). The district court then referred the matter to a Magistrate Judge to recommend appropriate damages and to reform the lease agreements. The Magistrate Judge recommended that the

---

trademarks, logos, patents, trade names, and rights thereto. American also purchased all of Pittcon's causes of action against both the insiders of the corporation and third parties. American bases its unchallenged standing to bring this suit on its purchase of Pittcon's causes of action.

**4.** American and the Trustee initially claimed that only $54,100 of the original $80,000 was owed to Pittcon because it had withheld lease payments to Pittman against the alleged loan. The $54,100 amount was subsequently reduced to $52,872 because Pittcon's books reflected that Pittcon had withheld $27,128 in lease payments, rendering the $54,100 figure inaccurate. Pittman, however, claims that this money was wrongfully

withheld from lease payments and is currently owed to him. At the time of trial, Pittman had suit pending in the circuit court of Maryland for the rent arrearage.

**5.** Industrial Revenue Bonds are issued by the County to enable local businesses to procure low interest loans. The purpose of the IRBs is to help the businesses expand within the county and employ county residents.

**6.** The district court made no findings as to whether Patrice Pittman breached any fiduciary duty, therefore we assume that its judgment was based solely on David Pittman's actions.

Pittmans pay compensatory damages for the lease payments in excess of fair market value in the amount of $1,170,429.00, and reformed the leases to reflect fair market prices. The district court adopted the Magistrate Judge's findings in its final order. Pittman appeals.

## II.

The Pittmans first challenge the district court's determination on summary judgment that the $80,000 payment from Pittcon to Mr. Pittman was a loan and not a bonus. The district court's grant of summary judgment is subject to *de novo* review. *Foster v. Federal Emergency Management Agency*, 984 F.2d 128, 130 (4th Cir.1993). Summary judgment should be granted if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511.

The district court found that Pittman did not assert any facts from which a reasonable factfinder could conclude that the $80,000 payment was a bonus and not a loan. We disagree. Pittman submitted his own affidavit and the affidavit of Ruth Cook, the Vice President and Chief Financial Officer for Pittcon. Both affidavits state that in 1986, Pittman was given a bonus of $80,000. The affidavits assert that both Pittcon's accountant and Cook recommended that Pittman take the bonus because Pittcon's profits were forecast to exceed one million dollars in 1986 and they wished to lower the corporation's tax liability.

Pittman's affidavit also explained that because he was in a high tax bracket individually, he elected to set up a non-profit foundation for charitable gifts into which he deposited the $80,000. Furthermore, the district court had before it the deposition testimony of Robert Hauk, accountant for Pittcon and the Pittmans, who testified that for tax purposes Pittman and Pittcon originally treated the $80,000 payment as a loan and, thus, did not reflect the payment as income to Pittman on either the company or Pittman's individual tax returns for 1986. He further explained that Pittman later treated it as an income adjustment on his 1987 individual tax returns, but that Pittcon's 1987 tax return failed to reflect the changed character as a bonus because accountants unfamiliar with the transaction prepared the corporate tax return.

American and the Trustee argue that the grant of summary judgment should be affirmed because the affidavits submitted by Pittman constitute an attempt to create a sham issue of fact. *See Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir.1990). In *Rohrbough*, the only affidavit that raised a genuine issue of material fact conflicted with the affiant's prior deposition testimony. Therefore, we held that the district court was correct in granting summary judgment because the affidavit was an attempt by the plaintiff to create an issue of fact where there was none. *Id.* at 976. American and the Trustee argue that the affidavits submitted on behalf of Pittman are similar to those considered in *Rohrbough*. However, neither Pittman's nor Cook's affidavits differ from any other testimony that they gave previously, and their affidavits clearly conflict with the affidavits submitted by American and the Trustee. In this context, the district court should not have disregarded the affidavits.

Accordingly, we find that the conflicting affidavits raise a genuine issue of material fact as to whether the $80,000 payment was a loan. Thus, summary judgment should not have been granted and this issue is remanded to the district court for further proceedings.

## III.

The Pittmans next contend that the district court erred in placing the property and equipment at issue in a constructive trust and ordering their turnover to the Trustee. They further contend that the district court erred in finding that Pittman had breached a fiduciary duty to the corporation by engaging in the 1980 and 1985 IRB trans-

actions for his personal benefit. Thus, they argue that the court erred in ordering Pittman to pay damages to American. To resolve these related issues, we certified the following questions of law to the Court of Appeals of Maryland:

a. Whether a sole shareholder is liable to his corporation for usurpation of a corporate opportunity when, absent any demonstrated harm to creditors, he purchases property and equipment to be used by the corporation in his own name, and then leases the property and equipment to the corporation.

b. Whether a sole shareholder breaches a fiduciary duty to the corporation when he charges lease prices above fair market value for the property and equipment he leased to his corporation.

*Pittman v. American Metal Forming Corp.,* 336 Md. 517, 649 A.2d 356, 357 (1994). In its certified opinion, filed November 4, 1994, the Court of Appeals of Maryland resolved these two issues. *Id.* We consider each in turn.

As to the first question, the Maryland court held that a sole shareholder is not liable for the usurpation of a corporate opportunity when, in his own name, he purchases property and equipment for the corporation's use, so long as no creditors are harmed. *Id.* 649 A.2d at 359–63. Although the court recognized that in certain circumstances majority shareholders may owe fiduciary duties to minority shareholders of a corporation, a sole shareholder does not owe a general fiduciary obligation to his corporation. *Id.* 649 A.2d at 360. Here, there are no minority shareholders that have been or could have been injured. Furthermore, no creditors were prejudiced by the transactions at issue, which were approved by the secured party, Prince George's County and its assignees, and did not cause Pittman's later insolvency. Thus, the Maryland court held that given the absence of harm to creditors, Pittman was not liable for a breach of fiduciary duty owed to the corporation or for usurping a corporate opportunity when he purchased in his own name property and equipment for the use of the corporation. *Id.* Furthermore, nothing in the record or arguments suggests that American was not fully aware of all relevant facts regarding the leaseback transactions when it purchased Pittcon's assets.

As to the second issue certified to the Court of Appeals of Maryland, the court found that Pittman, as sole shareholder of Pittcon Industries, breached no fiduciary duty when he charged lease prices above fair market value for the property and equipment leased to the corporation. *Id.* 649 A.2d at 363–64. For the same reasons the court found no liability as to the first certified issue, it discerned "no breach of fiduciary duty by Pittman, the sole shareholder," in the second certified issue. *Id.*

■ Now that the Court of Appeals of Maryland has resolved these questions of Maryland law, we address the Pittmans' contentions with regard to the decision of the district court. The Pittmans first challenge the district court's imposition of a constructive trust on the two properties and equipment owned in their names. Because a constructive trust is equitable relief, we review its imposition under an abuse of discretion standard. *Blackwelder Furniture. Co. of Statesville, Inc v. Seilig Mfg. Co.,* 550 F.2d 189, 193 (4th Cir.1977) ("[a] judge's discretion is not boundless and must be exercised within the applicable rules of law or equity.") Given the conclusion of the Maryland court that David Pittman usurped no corporate opportunity and thus breached no fiduciary duty to Pittcon, we conclude the district court abused its discretion in imposing a constructive trust. We therefore reverse the decision of the district court as to this issue.

■ As to the award of damages to American and the Trustee, the district court found that the Pittmans owed damages to Pittcon of $1,170,429.00 for the amounts charged on the leases in excess of fair market value. In so finding, the district court treated the lease agreements as a further usurpation of a corporate opportunity. Because the Maryland court found that the Pittmans did not usurp a corporate opportunity, we cannot uphold the award of damages on that theory. Furthermore, given the conclusion of the Maryland court that Pittman, as sole shareholder of Pittcon Industries, breached no fiduciary duty when he charged lease prices above fair market value for the property and equipment leased to the corporation, *Pittman,* 649 A.2d at 363, we vacate

the district court's award of damages. We remand for further proceedings, however, to determine if Pittman, in his capacity as director and president of Pittcon Industries, complied with the disclosure and ratification requirements of § 2–419 of the Maryland Corporations and Associations Code, Md. Corps. & Ass'ns Code Ann. § 2–419 (1993).[7] The district court also found that Pittman exercised undue influence over Pittcon in entering into the lease agreements, and, as a result, the leases should be reformed to reflect fair market value. Because we have not determined that the Pittmans engaged in any wrongdoing, we cannot uphold the district court's rationale in reforming the lease agreements. However, the Pittmans did not object to the Recommendation of the Magistrate that the leases be reformed, and at oral argument the attorney for the Pittmans stated that the Pittmans agreed to the new terms of the lease. It is clear that parties are free to modify a contract by altering or adding provisions. *Littell v. Morton*, 369 F.Supp. 411, 422 (D. Md.1974), *aff'd*, 519 F.2d 1399 (4th Cir.1975). Therefore, because the reformation of the leases was actually a modification by the parties, we will not disturb it.[8]

### IV.

In summary, because we find that the district court erred in granting summary judgment on the issue whether the $80,000 payment to Mr. Pittman in December 1986 was a loan or a bonus, we reverse the district court's grant of summary judgment in favor of American and the Trustee and remand for further proceedings on this issue. In addition, in light of the response of the Court of Appeals of Maryland to the certified issues, we reverse the district court's imposition of a constructive trust on the properties and equipment owned individually by David and Patrice Pittman. We vacate the district court's grant of damages to American and the Trustee and remand for the court to determine the application of § 2–419 of the Maryland Corporations and Associations Code. Finally, we leave intact the reformed terms of the lease agreements as a modification by the parties.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

---

**7.** The Maryland Court of Appeals noted that its decision relevant to Pittman's status as a sole shareholder in no way suggested that Pittman as director and president of Pittcon Industries might be liable for breach of fiduciary duty arising from the leaseback transactions. *Pittman*, 649 A.2d at 363 n. 3. Indeed, the Maryland court emphasized that § 2–419 "is basically an assurance that minority shareholders are given the opportunity to approve or disapprove of transactions entered into by interested directors." *Id.* Given the undisputed absence of any minority shareholders in the instant case, § 2–419 would seem to be inapplicable under the court's analysis. However, the Maryland court's consideration of the director liability issue arguably goes beyond the scope of the issues certified by this court. Thus, we are reluctant to decide this issue based upon what may be considered dicta by the Court of Appeals of Maryland. Although

Pittman testified at trial about the existence of two other directors of Pittcon, the record below is silent as to any possible disclosure of the terms of the leases and subsequent ratification by the disinterested directors in accordance with § 2–419(b)(1)(i). Thus, we leave to the district court to discern whether § 2–419 was complied with and, if not, whether compliance can be excused based upon the asserted purpose of § 2–419 to protect minority shareholders, who are not present under the facts of this case.

**8.** The parties entered into a stipulation reforming the lease for 6501 Rhode Island Avenue on September 21, 1992, which was approved by the Magistrate Judge. The equipment leases were reformed by .order of the district court on November 18, 1992.